UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| GALE MARIE WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | No. ED CV 14-2146-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 23, 2014, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 17, 2014, and December 10, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 8, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

## II.

## **BACKGROUND**

Plaintiff was born on November 19, 1964. [Administrative Record ("AR") at 178, 186.] She has past relevant work experience as a data entry clerk. [AR at 53, 106.]

On January 18, 2011, plaintiff filed an application for a period of disability and DIB, and on November 15, 2010, she filed an application for SSI payments, alleging in both that she has been unable to work since October 24, 2009. [AR at 98, 176, 186.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 98, 127-28.] A hearing was held on August 14, 2012, at which time plaintiff appeared represented by a non-attorney representative, and testified on her own behalf. [AR at 7, 22-58.] A vocational expert ("VE") also testified. [AR at 53-55.] On November 2, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from October 24, 2009, the alleged onset date, through November 2, 2012, the date of the decision. [AR at 98-107.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 7.] When the Appeals Council denied plaintiff's request for review on May 3, 2014 [AR at 9-13], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

2

(same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability

1. to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.
2. If the claimant has a "severe" impairment or combination of impairments, the third step requires
3. the Commissioner to determine whether the impairment or combination of impairments meets or
4. equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,
5. subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If
6. the claimant's impairment or combination of impairments does not meet or equal an impairment
7. in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
8. sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
9. and the claim is denied. Id. The claimant has the burden of proving that she is unable to
10. perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a
11. prima facie case of disability is established. Id. The Commissioner then bears the burden of
12. establishing that the claimant is not disabled, because she can perform other substantial gainful
13. work available in the national economy. Id. The determination of this issue comprises the fifth
14. and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at
15. 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 24, 2009, the alleged onset date.[1] [AR at 100.] At step two, the ALJ concluded that plaintiff has the following severe impairments:

> [L]eft knee degenerative joint disease and internal derangement; left knee enthesopathy; history of left knee arthroscopy surgery; angina with evidence of cardiac ischemia; lumbar spine facet arthropathy; cervical spine degenerative disc disease; and obesity.

[Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 101.]

---

[1]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. [AR at 100.]

The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a),[3] as follows:

> [C]an lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; she can stand and/or walk for a maximum of 25 minutes at a time; she can sit for six hours out of an eight-hour workday with regular breaks; she is limited to occasional pushing and/or pulling with the left lower extremity; she cannot kneel or crouch; she can no more than occasionally stoop, crawl, and climb; and she can no more than occasionally be exposed to extreme heat or cold.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a data entry clerk. [AR at 53-54, 106.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of October 24, 2009, through November 2, 2012, the date of the decision. [AR at 106.]

## V.
## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) evaluated the medical evidence in assessing plaintiff's RFC; and (2) rejected plaintiff's subjective symptom testimony. [Joint Stipulation ("JS") at 4.]

As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A.   MEDICAL OPINIONS**

Plaintiff contends the ALJ failed to properly evaluate the medical evidence in assessing

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

plaintiff's RFC. [JS at 5.] Specifically, she contends that the ALJ failed to articulate specific and legitimate reasons for rejecting the lifting limitation suggested by plaintiff's treating orthopedist, Tushar Doshi, M.D. [JS at 4, 7.]

### 1. Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

### 2. Analysis

Dr. Doshi, the treating orthopedist for plaintiff's worker's compensation claim, conducted

6

a final evaluation of plaintiff on June 7, 2011. [See, e.g., AR at 403-13.] Dr. Doshi found that plaintiff could stand and walk for no more than 25 minutes at a time; could not kneel or squat; could not repeatedly climb; and could not lift over 5 pounds.[4] [AR at 412.] The ALJ stated the following regarding Dr. Doshi's opinion:

> I gave significant weight to treating physician, Dr. Doshi, and his report of June 7, 2011 in which he indicated [plaintiff] was limited to standing and walking for no more than 25 minutes at a time, no kneeling or squatting, no repeated climbing, and no lifting over five pounds. I find these limitations with the exception of the lifting restriction are generally consistent with the residual functional capacity findings herein. As the [plaintiff's] treating physician, he is familiar with the [plaintiff's] ongoing physical issue [sic] to this time and accordingly his opinion regarding her functional limitations are credible. They are also generally supported by the medical evidence. However, there is no medical evidence to support the five-pound lifting restriction. At the time of this report, there was no evidence of significant lumbar issues and the claimant's left lower extremity impairment alone would not reasonably support such extreme limitations.

[AR at 105 (citation omitted).]

A review of the record, however, does not support the ALJ's statement that *at the time of* Dr. Doshi's report "there was no evidence of significant lumbar issues." For instance, Dr. Doshi's initial consultation report on October 28, 2009, reflects that plaintiff complained of moderate right-sided occipital headaches; moderate bilateral neck pain; slight right shoulder pain, worse when reaching too far or high; *moderate left-sided mid-back pain, worse with bending*; *severe left-sided low back pain, worse with standing too long*; severe left knee pain; leg pain; and moderate left ankle pain. [AR at 289-91.] At Dr. Doshi's final evaluation on June 7, 2011, plaintiff complained of occasional and slight left-sided lateral headaches; occasional and minimal right-sided neck pain; occasional and minimal right elbow pain; *frequent and severe right-sided low back pain*; moderate

---

[4] The VE testified that an individual limited to a full range of sedentary work, who is limited to standing and walking a minimum of 25 minutes at a time, no more than occasional pushing or pulling with the left lower extremity, no kneeling or crouching, no more than occasional stooping, crawling, and climbing, and no more than occasional exposure to extreme heat or cold would be able to perform plaintiff's past relevant work as customarily performed. [AR at 53-54.] The VE also testified that if the same individual was further limited to lifting and carrying a maximum of five pounds, there would be no past work available to the person, and no other jobs that person could perform. [AR at 54.]

and constant left knee pain[5]; *radiating pain from her low back to her leg; pain in her back at night and when at rest*; swelling and giving-way of her left knee; weakness in her left leg; and stiffness in her hip and leg. [AR at 404.] In his final report, Dr. Doshi generally noted that as a result of her June 5, 2009, accident, plaintiff "sustained *significant injuries* to her [n]eck, *upper and low back*, left hip, left upper and lower leg, left knee and left ankle and foot." [AR at 412 (emphasis added).] He opined that her "long-term prognosis is strongly guarded." [Id.]

Additionally, on June 13, 2011, just six days after Dr. Doshi's final report, plaintiff presented to her treating orthopedist, Neil Halbridge, M.D., complaining of "constant severe stabbing and burning low back pain with radiation to the right lower extremity in the L4/L5 Dermatones," with her pain rated at 7-8 on a 10 point scale. [AR at 430.] It was noted she had a mildly antalgic gait because of the low back pain, and positive straight leg raising on the right side. [AR at 433.] The report noted that lumbar spine x-rays taken on May 23, 2011, several weeks *prior* to Dr. Doshi's report, showed "Sacralization of L5," and "Facet arthropathy L4-5." [AR at 433.] Dr. Halbridge diagnosed plaintiff with right low back pain with L4-5 facet arthropathy and right lower extremity lumbar radiculitis. [Id.] He recommended that she obtain an MRI of the lumbar spine, and ordered a lateral brace for her left knee. [Id.] An MRI of plaintiff's lumbar spine on August 10, 2011, showed facet degenerative changes at L4-L5 and L5-S1 with no disc protrusion, spinal stenosis, and neural foraminal narrowing. [AR at 104 (citation omitted).] Physical examinations from May 2010 through July 2012 generally showed complaints of increased and severe back pain as well as continued knee pain, decreased lumbar range of motion, positive straight leg raise results, and positive Fabere[6] signs. [See, e.g., 432-33, 544, 555, 557, 560, 565, 567, 568, 569, 570, 572, 575, 585, 586, 588, 590-91, 601, 633, 635, 638, 640, 650, 653, 654, 658, 660-62, 663, 665-67, 668, 670-72, 673, 675-77, 678, 680-81, 683-84, 685, 686, 687, 689.] Moreover, although the ALJ

---

[5] Although in February 2010 plaintiff underwent arthroscopic left knee surgery consisting of lateral meniscectomy and chondroplasty, she continued to complain of left knee pain post-operatively. [See, e.g., AR at 427.]

[6] Fabere results are positive if there is pain on Flexion, Abduction, External Rotation, and Extension of the hip. http://medical-dictionary.thefreedictionary.com (last visited on July 22, 2015).

stated that it was August 2012 when plaintiff began receiving lumbar facet injections [AR at 104], the record indicates she received at least one such injection as early as April 19, 2012. [See, e.g., AR at 657.]

A review of the record also demonstrates that Dr. Doshi is not the only treating physician who opined that plaintiff should be restricted in terms of lifting. For instance, plaintiff's treating physician, Karen McKeown, M.D., who completed a "Physical Capacities Evaluation" on February 15, 2012, also opined that plaintiff can only occasionally lift/carry up to five pounds [AR at 529], and stated that the medical basis for plaintiff's limitations included her knee pain, and lumbar spine pain at L4-S1, facet arthropathy, with lumbar radiculitis.[7] [AR at 530.] In fact, it was Dr. McKeown who initially ordered the 2011 x-rays and MRI of plaintiff's lumbar spine. [See, e.g., AR at 544, 557.] Additionally, on December 22, 2011, Dr. Halbridge diagnosed plaintiff with "[l]ow back pain with L4-S1 facet arthropathy with **LEFT** lower extremity L5 lumbar radiculitis," degenerative joint disease of the left knee with genu valgum, and chondromalacia patellae of the left knee, and also stated that plaintiff should avoid "heavy pushing pulling and lifting as much as possible."[8] [AR at 677.] He restated this limitation on May 24, 2012. [AR at 690.]

---

[7] The ALJ gave "less weight" to Dr. McKeown's evaluation because the "checklist-style form appears to have been completed as an accommodation to [plaintiff] and includes only conclusions regarding functional limitations without any rationale for those conclusions." [AR at 105.] As noted, however, Dr. McKeown specifically pointed to plaintiff's knee and lumbar spine issues to support her conclusions. [AR at 530.] The ALJ also discounted Dr. McKeown's opinion on the ground that "the medical evidence showed that [plaintiff's] symptoms essentially stabilized after her knee surgery," there was "no evidence of significant ongoing clinical findings such as evidence of positive straight leg raising tests and evidence of ongoing swelling and edema in [plaintiff's] left knee," and that Dr. McKeown "never referred to any treatment records to support her highly restrictive functional limitation assessments." [Id.] However, as noted above, the medical records from May 2011 through July 2012, including Dr. McKeown's records, generally showed *ongoing* complaints of knee pain and swelling, as well as increased complaints of back pain, decreased lumbar range of motion, and positive Fabere signs.

[8] Other than including Dr. Halbridge's records in his brief mention of examinations from December 2011 through July 2012 that reflected that plaintiff's "signs remained consistent," and her "conservative treatment," the ALJ does not specifically mention the weight given to Dr. Halbridge's opinion or clinical findings, which included decreased lumbar range of motion, positive Fabere signs, and a recommendation for additional knee injections. [See, e.g., AR at 658-77, 687-90.] Treating orthopedist Donald Kim, M.D., also recommended additional lumbar facet injections. [AR at 678-84.]

Moreover, the ALJ was inconsistent in the evidence he relied on to determine the weight to give to the medical opinions in the record. For instance, in giving "little weight" to the state agency physical review consultants' opinions on initial review in March 2011, and on reconsideration in September 2011, the ALJ specifically relied on plaintiff's "longitudinal history of her left knee impairment," and her "*more recent* diagnostic evidence indicating a *significant lumbar impairment*"[9] to find that the record did *not* support those consultants' less restrictive lift/carry limitations consistent with light work. [AR at 105 (emphasis added).] Yet, although the ALJ specifically considered plaintiff's "more recent diagnostic evidence" of lumbar impairment in discounting *these* consultants' opinions, he specifically declined to consider that evidence when he determined that *at the time of* Dr. Doshi's June 2011 opinion, "there was no evidence of significant lumbar issues," a finding that as discussed was not otherwise supported by the evidence even at the time of Dr. Doshi's opinion, let alone shortly thereafter.

An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination. Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries . . . and ignored the many others that indicated continued, severe impairment"). As the ALJ acknowledged, plaintiff's "more recent diagnostic evidence indicat[es] a *significant lumbar impairment*." [AR at 105 (emphasis added).] As discussed, at the time she first saw Dr. Doshi, plaintiff complained of back pain, including lumbar pain, and objective clinical evidence of lumbar impairment was obtained prior to Dr. Doshi's final report, and confirmed shortly after that report was issued. Thus, the ALJ's statement that there was "no medical evidence to support the five-pound lifting restriction," because there was "no evidence of significant lumbar issues"[10] at the time of Dr. Doshi's report, is not supported by

---

[9] As noted, the ALJ found that plaintiff has the severe impairment of lumbar spine facet arthropathy. [AR at 100.]

[10] Plaintiff's severe impairment of cervical spine degenerative disc disease, especially in
(continued...)

10

1  substantial evidence either at the time of Dr. Doshi's report, or later, when the record is properly
2  considered as a whole.
3  Based on the foregoing, the ALJ did not provide specific and legitimate reasons supported
4  by substantial evidence for discounting Dr. Doshi's opinion and remand is warranted on this issue.

**B.  CREDIBILITY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 4, 13-17, 24-25.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim, 763 F.3d at 1163; 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 101-06], the ALJ's reasons

---

[10](...continued)
combination with her other impairments, might also contribute to the need for a lifting limitation.

for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 725 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. at 1138 (quoting Lester, 81 F.3d at 834) (internal quotation marks omitted). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (citation and internal quotation marks omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Id. at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, the ALJ discounted plaintiff's credibility based on a lack of objective findings to support her complaints, on a determination that her alleged consistent high level of pain (8 on a 10 point scale) was not supported by the medical evidence, on the conservative nature of her treatment for her left knee after her February 2010 knee surgery, and the lack of intervention for her back pain. [AR at 102-06.] However, the record is replete with evidence of plaintiff's complaints regarding her chronic and severe knee and back pain.[11] Moreover, plaintiff has received multiple injections for both her knee and back pain. [See, e.g., AR at 411, 657, 672, 681, 724.] This Court has previously found that spinal epidural injections are not "conservative" treatment. See, e.g., Harvey v. Colvin, 2014 WL 3845088, at *9 (C.D. Cal. Aug. 5, 2014)

---

[11] At the hearing, plaintiff testified that her pain with medication is at 8 on a 10-point scale, and without medication would be at 10. [AR at 39.] The ALJ then advised plaintiff that a "10 out of 10 on this [pain] scale would mean she needed to go to the emergency room." [AR at 39, 102.] Plaintiff replied that without her pain medications her pain is at level 10 and she would "end up in the emergency room." [AR at 39; see also AR at 600-01 (plaintiff presented at emergency room complaining of lower back pain radiating to her legs at a severity of 10); 704 (same).] The record reflects that plaintiff has consistently described her knee and back pain to her treating physicians as constant, and between 8 and 10 on a 10-point scale or, alternatively, as severe. [See, e.g., AR at 280, 303, 340-51, 423, 427, 588, 600, 635, 638, 650, 654, 658, 663, 668, 673, 678, 683, 685, 687, 704, 722, 725, 727, 759.]

(injections to the cervical region consisting of stellate ganglion blocks that were not entirely effective did not support ALJ's reliance on conservative treatment to support an adverse credibility finding) (citing Yang v. Barnhart, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (ALJ's finding that claimant received conservative treatment was not supported by substantial evidence when claimant underwent physical therapy and epidural injections, and was treated with several pain medications)); see Miller v. Astrue, 2009 WL 800227, at *3 (E.D. Cal. Mar. 25, 2009) (ALJ's finding that claimant was not credible properly considered "the conservative nature of [claimant's] treatment" since claimant "was not a surgical candidate, did not use a TENS unit, *had not undergone* epidural steroid injections and only intermittently took pain medications") (emphasis added). In any event, the fact that plaintiff has received, and been recommended to receive spinal (and knee) injections to help control her pain is relevant for purposes of determining whether treatment has been "conservative." See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (stating that a physician's *failure* "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain" may be evidence of conservative treatment).

Accordingly, the Court finds that the ALJ's reasons for discounting plaintiff's credibility are not specific, clear and convincing. Remand is warranted on this issue.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Dr. Doshi, on remand, the ALJ shall reassess the opinion of Dr. Doshi, as well as the opinions of treating physicians Dr. McKeown, Dr. Kim, and Dr. Halbridge. In assessing the medical opinion evidence of all of these doctors, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Second, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, the ALJ shall reconsider all of plaintiff's limitations in making his RFC determination. Thereafter, with the assistance of a VE, if warranted, the ALJ shall proceed through step four and, if warranted, step five to determine whether plaintiff can perform her past relevant work or any other work existing in significant numbers in the national economy.

/
/
/
/
/
/
/
/
/
/

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 23, 2015

　　　　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE